UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

North American Energy I, Inc. d/b/a
True Shot Ammo, TacServ LLC d/b/a
Outdoor Limited, and MGCC
Enterprises LLC d/b/a Flip Ammo,

    Plaintiffs,

v.

Scissortail Firearms LLC, Nathan
Beauchamp, Triad Defense Solutions
LLC, Blind Fire Defense, LLC, and
Benjamin Bradley,

    Defendants.

Case No.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, North American Energy I, Inc. d/b/a True Shot Ammo ("True Shot"), TacServ LLC d/b/a Outdoor Limited ("Outdoor"), and MGCC Enterprises LLC d/b/a Flip Ammo ("Flip Ammo")(collectively, the "Plaintiffs"), by and through undersigned counsel, file their Complaint and Demand for Jury Trial against defendants Scissortail Firearms LLC, Nathan Beauchamp, Triad Defense Solutions LLC, Blind Fire Defense LLC, and Benjamin Bradley (collectively, the "Defendants") and state as follows:

### NATURE OF THE ACTION

1. This action arises out a failed proposed transaction for the sale of 4,395,000 rounds of ammunition to Plaintiffs. In August 2023, Plaintiffs each made

1

payments of $468,000, for a total of $1,406,400, to a lead broker who had contracted with Defendants to deliver the ammunition. For reasons unknown to Plaintiffs, the transaction fell through.

2. Following the cancellation of the sale, the manufacturer refunded the $1 million payment it received for the ammunition, and the lead broker refunded its commission. Defendants, who were also brokers on this transaction, have not refunded their commissions, despite repeated demands to do so.

3. Plaintiffs seek monetary damages arising from Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment, and conversion, or in the alternative, breach of contract and breach of implied covenant of good faith and fair dealing.

## PARTIES

4. Plaintiff North American Energy I, Inc. d/b/a True Shot Ammo ("True Shot") is a Delaware corporation with its principal place of business located in Tempe, Arizona.

5. Plaintiff TacServ, LLC d/b/a Outdoor Limited ("Outdoor") is a North Carolina limited liability company with its principal office located in High Point, North Carolina.

6. Plaintiff MGCC Enterprises LLC d/b/a Flip Ammo ("Flip") is a Virginia limited liability company with its principal office located in Lorton, Virginia.

7. Defendant Scissortail Firearms LLC ("Scissortail") is an Oklahoma limited liability company with its principal office located in Ada, Oklahoma.

8. Defendant Nathan Beauchamp ("Beauchamp") is a resident of Oklahoma. Upon information and belief, Beauchamp is the sole member and owner of Scissortail.

9. Defendant Triad Defense Solutions LLC ("Triad") is a Florida limited liability company with its principal office located in New Port Richey, Florida.

10. Defendant Blind Fire Defense LLC ("Blind Fire") is a Florida limited liability company with its principal office located in South Daytona, Florida.

11. Defendant Benjamin Bradley ("Bradley") is a resident of Florida. Upon information and belief, Bradley is a member of and controls Triad, and is the Chief Operations Officer of Blind Fire.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between all plaintiffs and all defendants and the amount in controversy exceeds $75,000.

13. The Court has personal jurisdiction over Blind Fire, Triad, and Bradley because they are citizens of Florida.

14. The Court has personal jurisdiction over Scissortail and Beauchamp because they contracted with Blind Fire, Triad, and Bradley to provide ammunition broker services to Plaintiff and, in the process, sent and received funds from Blind Fire, Triad, and Bradley, all of whom are residents of Florida. The claims asserted herein arise from Scissortail and Beauchamp's business activities with Blind Fire, Triad, and Bradley.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants Triad, Blind Fire, and Bradley have their principal place of business and reside in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

16. True Shot, Outdoor Limited, and Flip Ammo are ammunition retailers and, in the course of their respective businesses, purchase ammunition from third-party brokers.

17. It is common for multiple brokers to work together to fulfill a retailer's ammunition purchase, with each broker receiving a commission as compensation for procuring the desired product. Brokers typically include their commissions in the price presented to the prospective buyer.

18. Beauchamp owns and operates Scissortail, an Oklahoma-based firearms importer, manufacturer and ammunition broker.

19. Bradley is the Chief Operations Officer of Blind Fire, a Florida-based firearms manufacturer and ammunition broker. Bradley is also a member of and controls Triad. Upon information and belief, Blind Fire and Triad collaborate in the course of selling ammunition to retailers like the Plaintiffs.

20. In general, Plaintiffs enter into verbal contracts with ammunition brokers to purchase an agreed upon quantity of particular kind of ammunition at a set price per round. These tend to be handshake deals and are not memorialized by a written contract. The transaction underlying this lawsuit was consistent with this practice.

21. In mid-August 2023, non-party C.J., through his ammunition brokerage business Jones Security, LLC (collectively, "Jones Security"), contacted each of the Plaintiffs to inquire about their interest in purchasing a portion of an incoming shipment of 5.56mm ammunition manufactured by Olin Winchester, LLC ("Winchester"). Jones Security claimed it could ship Plaintiffs the ammunition in about one week.

22. Each Plaintiff accepted Jones Security's offer to sell 1,465,000 rounds of the 5.56mm Winchester ammunition at a rate of $0.32 per round and paid $468,800 to Jones Security. In the aggregate, Plaintiffs agreed to purchase 4,395,000 rounds for a total amount of $1,406,400.

23. Jones Security contracted with Scissortail and Beauchamp, who in turn contracted with Triad, Blind Fire, and Bradley, to fulfill the sale to Plaintiffs.

24. Once it received the payments from Plaintiffs, Jones Security retained a commission of $84,850 and remitted the remaining $1,321,550 to Scissortail, from which Scissortail and Beauchamp retained a commission of $110,553.

25. Scissortail then transferred $1,210,997 to Triad and Blind Fire, from which Triad, Blind Fire, and Bradley retained a commission of $210,997.

26. Subsequently, Blind Fire made a $1 million deposit payment to Winchester.

27. For reasons unknown to Plaintiffs, the sale of 5.56mm ammunition was cancelled.

28. On or about September 5, 2023, Blind Fire, Triad, and Bradley submitted a return of funds request to Winchester for the $1 million.

29. In exchange for Winchester returning the $1 million deposit payment, the Plaintiffs, Defendants, Winchester, Jones Security, and C.J. agreed to a full release of all claims against Winchester and executed an Agreement for Return of Deposit Funds and Release of Any and All Claims Against Olin Winchester, LLC, dated October 25, 2023 (the "Winchester Release").

30. All of the Plaintiffs and Defendants executed the Winchester Release, the recitals of which expressly acknowledged the commissions Defendants retained from the now-failed transaction.

31. The Winchester Release did not contemplate the Defendants' return of funds nor release any claims Plaintiffs have against Scissortail, Beauchamp, Triad, Blind Fire, or Bradley.

32. Shortly after all parties executed the Winchester Release, Plaintiff received equal payments from Winchester, totaling $1 million, and Jones Security, totaling $84,850.

33. In a letter dated October 16, 2023, Bradley, on behalf of Triad and Blind Fire, communicated Defendants' intention to return their commissions to Plaintiffs. In addition to agreeing to repay the unearned $210,977 commission, Bradley claimed he sent $30,000 of the amount owed by him, Triad, and Blind Fire to Scissortail on October 6 and promised to return the remaining $180,977 to Scissortail "post haste [sic]."

6

34.     After deducting the above $30,000.00, which was repaid to Plaintiffs on or about December 6, 2023, Defendants collectively owe Plaintiffs $291,550.00 in unearned commissions. This is expressly acknowledged in an email Bradley sent to Plaintiffs' counsel and counsel for Scissortail on December 15, 2023.

35.     According to this December 15 email, Bradley and Beauchamp purportedly agreed that Bradley would assume "responsibility for the commissions Nathan Beauchamp of Scissortail Firearms is due to pay back to [the Plaintiffs]" and "return all funds owed totaling $291,550.00 which includes any and all commissions from both Blind Fire Defense and Scissortail Firearms."

36.     Aside from the December 15 email, Plaintiffs have no proof that such an agreement exists between Bradley and Beauchamp. More importantly, however, Plaintiffs are not parties to and are not bound by Bradley and Beauchamp's agreement, to the extent such an arrangement exists.

37.     As of this date, the Defendants have not repaid Plaintiffs any portion of the $291,550.00 in unearned commissions.

## CAUSES OF ACTION
## COUNT I
## Violation of Florida Deceptive and Unfair Trade Practices Act
### (All Defendants)

38.     Plaintiffs reallege and incorporate by reference paragraph 1 through 36 above, as if fully stated herein.

39.     The Florida Deceptive and Unfair Trade Practices Act is intended, *inter alia*, "[t]o protect the consuming public and legitimate business enterprises from those

who engage in . . . unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

40. Florida courts have defined an unfair act or practice as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015).

41. Defendants engaged in unconscionable, deceptive, and unfair acts or practices in the conduct of trade or commerce, within the meaning of Section 501.204, Fla. Stat., by retaining commissions after the sale of 5.56mm Winchester ammunition to Plaintiff fell through.

42. Defendants collectively retained commissions in an amount $321,550 in connection with the ammunition transaction, which was subsequently terminated, by no fault of any Plaintiff.

43. Other than one $30,000 payment made by Triad, Blind Fire, and Bradley to Plaintiffs, Defendants have not returned the balance of their unearned commissions.

44. As a result of Defendants' unlawful actions, Plaintiffs have been damaged, in an amount to be proven at trial and are entitled to all damages available under applicable law.

45. Pursuant to Section 501.2105, Fla. Stat., Plaintiffs are entitled to recover their attorneys' fees and costs from Defendants.

## COUNT II
### Unjust Enrichment

**(All Defendants)**

46. Plaintiffs reallege and incorporate by reference paragraph 1 through 44 above, as if fully stated herein.

47. Plaintiffs remitted to Defendants the agreed upon amount for their collective purchase of about 4.4 million rounds of 5.56mm Winchester ammunition. In exchange for brokering the transaction, Defendants received sales commissions totaling $321,500.

48. Because the transaction was subsequently terminated, Jones Security and Winchester refunded the money they each received from Plaintiffs.

49. Defendants have inequitably taken and retained the benefit of $291,550 in commissions following the proposed ammunition sale's termination.

50. Defendants would be unjustly enriched if allowed to retain such benefit without delivering the 4.4 million rounds of 5.56mm Winchester ammunition that Plaintiffs agreed to purchase.

51. Plaintiffs are thus entitled to all damages available under applicable law.

## COUNT III
## Conversion
**(All Defendants)**

52. Plaintiffs reallege and incorporate by reference paragraph 1 through 50 above, as if fully stated herein.

53. Plaintiffs remitted funds to Defendants in connection with their purchase of 5.56mm Winchester ammunition. In turn, Defendants retained commissions for

brokering the transaction. Following the termination of the ammunition sale, Defendants failed to return the unearned commissions to Plaintiffs.

54. Defendants have deprived and continue to deprive Plaintiffs of the use and benefit of the $291,550 in unearned commissions.

55. Defendants' deprivation of Plaintiffs' use and benefit of these funds is inconsistent with Plaintiffs' respective ownership interests in the retained unearned commissions.

56. As a direct and proximate result of Defendants' conversion of Plaintiffs' property, Plaintiffs have suffered economic injury in an amount to be proven at trial. Plaintiffs are entitled to all damages available under applicable law.

## COUNT IV
## Breach of Contract
## (All Defendants)

57. Plaintiffs reallege and incorporate by reference paragraph 1 through 55 above, as if fully stated herein.

58. Plaintiffs plead a cause of action for breach of contract in the alternative to unjust enrichment if this Court finds that the underlying transaction constitutes a valid and enforceable implied contract for good and valuable consideration between Plaintiffs and Defendants.

59. As described above, Plaintiffs agreed to purchase around 4.4 million rounds of 5.56mm Winchester ammunition at a rate of $0.32 per round and to pay Defendants commissions for procuring the ammunition.

60. Plaintiffs performed all of their contractual obligations and duties, including remitting funds sufficient to purchase the 5.56mm Winchester ammunition and pay Defendants' commissions.

61. For reasons unknown to Plaintiffs, the transaction fell through, and no ammunition was delivered.

62. Defendants failed to perform their duties by retaining unearned commissions totaling $291,550 following the termination of ammunition sale and, thus, materially breached the parties' implied agreement.

63. As a direct and proximate result of Defendants' material breaches, Plaintiffs have been damaged and continue to be damaged in an amount to be proven at trial, but not less than $291,550.

## COUNT V
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (All Defendants)

64. Plaintiffs reallege and incorporate by reference paragraph 1 through 62 above, as if fully stated herein.

65. Florida law recognizes an implied covenant of good faith and fair dealing in every contract.

66. Plaintiffs plead a cause of action for breach of implied covenant of good faith and fair dealing in the alternative to unjust enrichment if this Court finds that the underlying transaction constitutes a valid and enforceable implied contract for good and valuable consideration between Plaintiffs and Defendants.

67. Plaintiffs performed all of their contractual obligations and duties, including remitting funds to Defendants sufficient to purchase the 5.56mm Winchester ammunition and pay commissions to Defendants.

68. Following the termination of the transaction, Defendants failed to perform their duties by retaining unearned commissions, totaling $291,550.00, which Defendants acknowledged are owed to Plaintiffs.

69. Defendants' conscious and deliberate failure to discharge their contractual responsibilities has improperly deprived Plaintiffs of the benefits of the underlying agreement. Thus, Plaintiffs are entitled to all damages available under applicable law.

70. As a direct and proximate result of Defendants' breach, Plaintiffs have been damaged and continue to be damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, based on the foregoing, Plaintiffs respectfully request that this Court grant the following relief against the Defendants:

a. Entry of a judgment against all Defendants for violations of the Florida Deceptive and Unfair Trade Practices Act, conversion, and unjust enrichment or, in the alternative, breach of contract and breach of implied covenant of good faith and fair dealing;

b. For compensatory damages in excess of the jurisdictional minimum, and interest thereon, according to proof at trial;

c. For all costs and expenses, including reasonable attorneys' fees;

d.      For prejudgment interest at the maximum legal rate; and

e.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims set forth in this complaint.

Date: June 13, 2024

                Respectfully submitted,

*/s/ Lauren Humphries*

Lauren V. Humphries, Esq.
Florida Bar No.: 0117517
lauren.humphries@bipc.com
Vincent J. Bivona, Esq.
Florida Bar No.: 1050366
vincent.bivona@bipc.com
Buchanan Ingersoll & Rooney PC
TRUIST Place
401 E. Jackson Street, Suite 2400
Tampa, FL 33602-5236
Telephone: (813) 222-8180
Secondary email: Sabrina.Storno@bipc.com

*Attorneys for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing document to be served upon the following defendants by personal service through a process server:

Scissortail Firearms LLC;
Nathan Beauchamp;
Triad Defense Solutions LLC;
Blind Fire Defense, LLC; and,
Benjamin Bradley.

Dated: June 13, 2024

Respectfully submitted,

*Lauren Humphries*

Lauren V. Humphries, Esq.
Florida Bar No.: 0117517